UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JONATHAN B. NEUBER,

Plaintiff,

v.

JOSHUA PRITT, JOEL PICKERD, CODY SMITH, JUSTIN CARLEY,

Defendants.

6:15-cv-833-JR

FINDINGS AND RECOMMENDATION

RUSSO, Magistrate Judge:

Pro se plaintiff, Jonathan Neuber, brings this action asserting violation of his First and Fourteenth Amendment rights to domestic/familial association. Defendants seek summary judgment. Defendants' motion should be granted and this case dismissed.

## INTRODUCTION

Plaintiff alleges he lived with Lori Lemhouse and "had an intimate relationship" with her. Complaint #1 at p. 3. Plaintiff alleges he and Lemhouse were convicted for charges related to drugs. Plaintiff further alleges he was convicted of domestic violence. Plaintiff asserts that none of the judgments of conviction contained a "no contact" order between he and Lemhouse. Id. at pp. 4-5. However, plaintiff alleges defendant Benton County probation officers did, in fact, order no contact between he and Lemhouse. Id. at p. 5.

Plaintiff alleges Lemhouse suffered from a disability and, while he was in jail for violating the no-contact order, she committed suicide by overdosing on Fentanyl. Id. at p.5-6.

Plaintiff asserts defendant Benton County probation officers Joshua Pritt, Joel Pickerd, Cody Smith, and Justin Carley violated his Fourteenth Amendment rights by:

> 1) Joshua Pritt and Joel Pickerd (plaintiffs Probation Officers) directing him in early/throughout 2014 not to cohabitate with/contact/associate with plaintiff's known long term domestic partner Lori Lemhouse but did NOT similarly direct other probationers under their supervision similarly situated in a domestic relationship not to co-habitat with/contact/associate with their domestic partners.
>
> 2) Cody Smith, Lori Lemhouse's Probation Officer directing her in early 2014 not to cohabitate with/contact/associate with plaintiff, Lori's known domestic partner but did NOT similarly direct other probationers under his supervision similarly situated in a domestic relationship not to cohabitate/with/contact/associate with their domestic partners.
>
> 3) Cody Smith's selective "bullying" of Lori Lemhouse, treating her far more harshly than other probationers under his supervision similarly situated (in terms of criminal record, potential danger to the public) in a) failing to accommodate her disability b) higher level of supervision c) less tolerance, in seeking sanctions/revocation of her probation (and 120 days in jail) on fewer and less serious violations.
>
> 4) Cody Smith having plaintiff sanctioned with 4 days in jail mid November 2014 simply for being found at his home of 5 years during a search of Lori's house. As a result plaintiff was in jail on November 10th 2014 and helpless to prevent Lori's

Page 2 - FINDINGS & RECOMMENDATION

death, which we allege was related to her mental state related to Mr. Smith's illegal action of preventing plaintiff from being with her as she desired.

5) Plaintiff made Probation Supervisor Justin Carley aware of these issues in a letter of mid 2014; while plaintiff was assigned a new P.O. (Joshua Pritt), nothing was done to resolve the non contact/association with/habitation with Lori Lemhouse issue.

Addenda to Complaint (#11) at pp. 1-2.[1]

To the extent plaintiff seeks to raise any claims on behalf of Lori Lemhouse he fails to demonstrate standing. During his deposition, plaintiff clarified his only claim against defendants was violation of his Fourteenth Amendment rights for loss of familial association. See Declaration of Nicholas Naumes (#91) at Ex. 2, pp. 11-12.

## BACKGROUND

It is undisputed plaintiff had a sporadic relationship with Lori Lemhouse. Lemhouse lived in a home owned by her parents in Corvallis, Oregon where plaintiff resided at times.

In April 2013, plaintiff was convicted of possession of Methamphetamine. As a condition of probation, the sentencing court prohibited plaintiff from frequenting places where controlled substances were used. Declaration of Nicholas Naumes (#91) at Ex. 2, p. 14. Plaintiff did not challenge this condition through the grievance process with Benton County Community Corrections. Defendant Pickerd supervised plaintiff following his conviction.

---

[1] To the extent plaintiff's complaint and addenda to complaint could be construed as alleging claims under the First Amendment or the equal protection clause of the Fourteenth Amendment, plaintiff has not pursued such claims. Plaintiff's sole claim is for violation of his right to familial association. See Christensen v. County of Boone, Illinois, 483 F.3d 454, 462 (7th Cir. 2007) (Choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion because freedom of association receives protection as a fundamental element of personal liberty under the due process clause.).

Page 3 - FINDINGS & RECOMMENDATION

Although plaintiff implies Lemhouse's drug use may have been related to her disability, it is undisputed that she used drugs at her home. Indeed, Lemhouse was also prohibited from associating with known drug users as a condition of her probation following a drug conviction, during 2013-2014. Defendant Pickerd determined plaintiff violated the terms of his probation by residing at Lemhouse's home and ordered him to move out. See Attachment to Complaint (#1-2) at pp. 16-17 (plaintiff's September 2013 letter to defendant Justin Carley complaining about order to move). Although plaintiff complained to defendant Carley about his forced move, he did not assert any violation of familial rights. Id. Soon after this incident, plaintiff was assigned to defendant probation officer Pritt.

Plaintiff asserts, with no evidence beyond his own assertion, he and Lemhouse became engaged sometime in June or July 2014. Plaintiff did not inform anyone at Benton County Parole and Probation that he and Lemhouse were engaged.

On November 15, 2013, plaintiff pleaded guilty to assaulting Lemhouse. Naumes Declaration (#91) at Ex. 2 at p. 39. Plaintiff was on post-prison supervision from November 29, 2013 through November 28, 2014. Id. at Ex. 1, p. 3. Defendant Pritt supervised plaintiff with respect to this conviction while he was on post-prison supervision. The Benton County Post-Prison Supervision Order included a condition that plaintiff refrain from contact with the victim of the assault, Lori Lemhouse. Declaration of Joshua Pritt (#87) at Ex. 6, p. 1. Plaintiff did not challenge any of the post-prison conditions.

On November 3, 2014, defendant Smith conducted a residence check at the Lemhouse residence and discovered plaintiff hiding in a closet and ordered him to leave. Defendant Pritt assessed a post-prison supervision violation on November 13, 2014. Naumes Declaration (#91) at

Page 4 - FINDINGS & RECOMMENDATION

Ex. 2, p. 43. Plaintiff was sentenced to four days in jail. Plaintiff waived a hearing and appeal of the assessment. Id. at p. 56.

## DISCUSSION

As noted above, plaintiff asserts a violation of his right to familial association through the due process clause of the Fourteenth Amendment. Courts must employ caution and restraint when employing substantive due process protections to government action. See Moore v. City of East Cleveland, Ohio, 431 U.S. 494, 502 (1977). However, courts must not abandon substantive due process rights. Id. Accordingly, substantive due process rights are limited by careful respect for the teachings of history and recognition of the basic values that underlie our society. Id. at 503. Therefore, only official conduct, depriving a person of life, liberty, or property, that "shocks the conscience" is cognizable as a due process violation. Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008). As a threshold matter, to establish his claim, plaintiff must show governmental deprivation of life, liberty, or property. See Jeffries v. Turkey Run Consol. Sch. Dist., 492 F.2d 1, 4 (7th Cir.1974) ("[T]he absence of any claim by the plaintiff that an interest in liberty or property has been impaired is a fatal defect in her substantive due process argument.").

While marriage is a fundamental right, plaintiff fails to establish a fundamental right to live with his girlfriend in these circumstances. Even if the interest in intimate/familial association is implicated here, such a liberty interest is not absolute rendering all conditions of supervision impermissible:

> There can be no doubt that the fundamental right to familial association is a particularly significant liberty interest, and that part 1 of special condition 9 implicates that interest [Footnote omitted]. This does not mean that part 1 is

Page 5 - FINDINGS & RECOMMENDATION

> necessarily invalid. "The existence of a constitutionally protected liberty interest ... does not render impermissible any condition that would interfere with the parent-child relationship." United States v. Davis, 452 F.3d 991, 995 (8th Cir. 2006). The parents' fundamental right to familial association "is not absolute" and "must be balanced against the interests of the state, and when conflicting, against the interests of the children." Kruse v. Hawai'I, 68 F.3d 331, 336 (9th Cir.1995) (internal quotation marks and citations omitted). Interference with that right, however, requires "a powerful countervailing interest," Lassiter, 452 U.S. at 27, 101 S.Ct. 2153 (internal quotation marks and citation omitted), and strict adherence to procedures is required.

United States v. Wold Child, 699 F.3d 1082, 1092 (9th Cir. 2012).

Here the countervailing interests are both protection of plaintiff's assault victim and preventing any drug crimes. Plaintiff fails to demonstrate that interference with his interest and right to live with his girlfriend supercedes the countervailing interests of protecting the victim and prohibiting drug crimes. Therefore, plaintiff fails to demonstrate a violation of his right to familial association through the due process clause of the Fourteenth Amendment. Moreover, defendants are entitled to absolute or qualified immunity with respect to this claim.

A.    Absolute Immunity

At issue is a condition of probation prohibiting plaintiff from contact with persons who use controlled substances (or places such substances may be found) and a condition of post-prison supervision prohibiting plaintiff's contact with the victim of a crime.

A court may set special conditions of probation that are reasonably related to the crime of conviction or the needs of the probationer for the protection of the public or reformation of the probationer, or both. ORS § 137.540(2). A local supervisory authority may specify conditions of supervision. ORS § 144.102.

Page 6 - FINDINGS & RECOMMENDATION

Judges are entitled to absolute immunity from suit for their judicial acts. Pierson v. Ray, 386 U.S. 547, 553–54 (1967). "When judicial immunity is extended to officials other than judges, it is because their judgments are 'functional[ly] comparab[le]' to those of judges—that is, because they, too, 'exercise a discretionary judgment' as part of their function." Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436 (1993) (quoting Imbler v. Pachtman, 424 U.S. 409, 423 n. 20 (1976)). Parole board members are entitled to absolute immunity when performing "quasi-judicial" functions. Anderson v. Boyd, 714 F.2d 906, 909–10 (9th Cir. 1983). Absolute immunity is also extended to parole officials for the "imposition of parole conditions" and the "execution of parole revocation procedures," tasks integrally related to an official's decision to grant or revoke parole. Id. at 909.[2]

Plaintiff's complaint implicates only conditions of parol and supervised release. As such, an action pursuant to 42 U.S.C. § 1983 against defendant officers for damages is prohibited due to their immunity from such actions.

B.  Qualified Immunity

Even if defendants' actions are not viewed as quasi-judicial, defendants are entitled to qualified immunity from suit. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment,

---

[2] The immunity extends to community corrections officers. See Oberg v. Asotin County, 310 Fed. Appx. 144, 145 (9th Cir. 2009).

Page 7 - FINDINGS & RECOMMENDATION

distraction, and liability when they perform their duties reasonably. The protection afforded by qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (quoting Butz v. Economou, 438 U.S. 478, 507 (1978)).

There is generally a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether plaintiff's alleged facts violate a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001) (receded by Pearson v. Callahan 555 U.S. 223 (2009) (finding Saucier step beneficial, but not mandatory)). Second, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Id.

Viewing facts in a light most favorable to plaintiff, it cannot be shown that defendants were aware of plaintiff's familial relationship with Lemhouse including any engagement. Moreover, it is not clearly established whether being engaged is a fundamentally protected right that could be violated by a no contact condition during a period of probation and supervised release. Plaintiff points to no case law clearly establishing such a right, nor has the court found such. Accordingly, defendants are entitled to qualified immunity with respect to plaintiff's Fourteenth Amendment claim.

C.    Remaining Basis for Summary Judgment

Finally, the court finds that defendants are further entitled to summary judgment on the basis of issue preclusion for the reasons stated in defendants' memos (#85 at pp. 9-10 and #99 at pp. 7-8).

## CONCLUSION

Defendants' Motion for summary judgment (#85) should be granted. Plaintiff's motion for partial summary judgment (#73) should be denied as moot and this action should be dismissed.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 21st day of November 2016.

Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge

Page 9 - FINDINGS & RECOMMENDATION